IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DIANA MIKLEBOST,

    Plaintiff,

vs.                                                         Civ. No. 98-444 LH\LCS

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

Proposed Findings

1. This matter comes before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Decision, filed December 3, 1998. The Commissioner denied Plaintiff's request for supplemental security income benefits. Plaintiff alleges a disability due to a learning disability.

2. The Commissioner denied Plaintiff's application for benefits both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's administrative law judge (ALJ) likewise denied the application. The Appeals Council did not review the ALJ's decision, thus the final decision of the Commissioner is the ALJ's decision. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993)(citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. *Id*.

(citation omitted).

4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: 1) the ALJ failed to address Plaintiff's mental condition under the Listings of Impairments as required by step three of the sequential evaluation process; 2) the ALJ erred by failing to accurately assess Plaintiff's mental residual functional capacity (RFC); 3) the ALJ erred by misinterpreting information regarding Plaintiff's eligibility for services through the Division of Vocational Rehabilitation (DVR); and 4) the ALJ relied on non-credible vocational expert (VE) testimony in concluding under step five the sequential evaluation process that the Plaintiff can do other work in the national economy.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." *Id.* at 1486 (citing 42 U.S.C. §423 (d)(1)(A)). To determine disability, the Commissioner has established a five step sequential evaluation process. *Id.* The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. *Id.* (citations omitted).

6. Steps three and five of the sequential evaluation process are at issue in this case. At step three, the claimant can demonstrate *per se* disability if her impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1. At step five, the burden shifts to the Commissioner to show that the claimant has an RFC to do work in the national economy other than past relevant work. 20 C.F.R. §416.960.

7. The Plaintiff argues first that the ALJ failed to make a proper step three determination because he summarily concluded that the Plaintiff's "impairments, whether considered singly or in

combination, do not meet or equal any impairment described in Appendix 1, Subpart P of Regulations No. 4." Tr. 18. Administrative agencies must adequately articulate reasons for their decisions. *See, e.g., SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943); *Harberson v. NLRB*, 810 F.2d 977, 984 (10th Cir. 1987). "[I]n determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th 1990). The Plaintiff argues that the ALJ should have evaluated her impairments under listing §12.02 for organic mental disorders. The ALJ's step three conclusion simply does not indicate whether the ALJ considered the Plaintiff's impairments under listing §12.02 or any other listing. Clearly, the ALJ's decision does not adequately articulate the ALJ's reasons for concluding that the Plaintiff does not meet or equal any of the listings. Accordingly, I find that the ALJ erred in that respect.

 8. The Plaintiff also asserts that the ALJ erred by failing to properly assess evidence of the Plaintiff's mental RFC. Although the ALJ is not required to discuss every piece of evidence, the record must demonstrate that the ALJ considered all of the evidence,. *Vincent ex rel. Vincent v. Heckler,* 739 F.2d 1393, 1394-95 (9th Cir. 1984), *cited in Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. *Clifton*, (citing *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984) ("a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position."). The ALJ, in this case, concluded that the Plaintiff has an RFC for "simple unskilled, one or two step sedentary or light work." Tr. 19. In coming to this conclusion, the ALJ relied on

3

a report by psychologist Catherine MacLean which indicated that "the claimant's ability to attend to detail was 'soundly average and, if given extra time initially, she is also able to solve problems involving at least familiar material again at a level within broad average limits.'" *Id*. The ALJ also relied upon that fact that the Plaintiff was a client at DVR which according to the ALJ "accept[s] only those who are considered capable of engaging in substantial gainful activity." *Id.* The ALJ further noted that although the Plaintiff was doing well working at Whataburger she quit because of personality conflicts. *Id*. The ALJ stated that the Plaintiff also quit her job selling toys. *Id.* The ALJ implied that the Plaintiff simply lost interest in working and decided to move to California thereby ending her participation in the DVR program. Tr. 20. The ALJ observed that the Plaintiff did not return to DVR and that "Dr. MacLean was unable to reach an AXIS III diagnosis, except for a possible 'explosive disorder.'" *Id.*

9. The ALJ's mental RFC assessment, however, is incomplete. Dr. MacLean further stated in her report that the Plaintiff's "communication, while well articulated, was often difficult in that she occasionally mixed up spatial and temporal relationships and the subject and object of her intended point." Tr. 92. Dr. MacLean also stated that "with comprehensive support services [Plaintiff] may be able to be adequately productive in certain competitive settings." *Id.* Dr. MacLean concluded that the Plaintiff

> appears to [be] a person who is necessarily dependent on others at this point and who is ill equipped to manage further skill training or employment on her own. The only reason she is sufficiently confident to be in an on the job setting appears to be that it is in a family business.[1] It is recommended that she be assisted with support services to acquire skills

---

[1]The Plaintiff worked at her father's dental laboratory for eight months cleaning flasks and doing simple office cleaning. Tr. 134. Plaintiff's father had to lay the Plaintiff off because she failed to go to work as scheduled, took an excessively long time to complete her work, could not keep on task, and did not do a thorough job. Tr. 171-78.

4

and eventually manage employment in an independent a manner as possible. Without such support, the probability of her getting involved in one thing or another that is not in the best interests of her vocational future is historically rather high. In addition, it would be appropriate for her to have some psychiatric follow-up for residual attention deficit symptoms and other problems with impulsivity and instability in mood and behavior.

Tr. 93. The ALJ, moreover, failed to fully explore psychiatrist Susan Eissele's report which indicated that the Plaintiff "would appear to need significant structure and support to be able to maintain in a work environment. [The Plaintiff] would likely need the assistance of family members to appropriately handle any funds due to her." Tr. 87. I find that the ALJ's mental RFC assessment fails to demonstrate that the ALJ considered all of the evidence with respect to the Plaintiff's mental RFC. In other words, the ALJ did not discuss uncontroverted evidence he chose not to rely upon nor did he explain why he impliedly rejected what appears to be significantly probative evidence in the reports of both Dr. MacLean and Dr. Eissele. Consequently, I find that the ALJ's mental RFC discussion is insufficient.

10. Next, the Plaintiff argues that the ALJ erred by misinterpreting the criteria for acceptance into the DVR. With respect to the Plaintiff's participation in the DVR program, the ALJ stated that the DVR "considered the claimant a fit subject for job placement.... The Division carefully screens all applicants, accepting only those who are considered capable of engaging in substantial gainful activity." Tr. 19. According to the DVR eligibility requirements, it accepts persons who have an impairment which substantially impedes employment and can benefit from vocational rehabilitation services in terms of employment outcome. Tr. 144. Contrary to the ALJ's DVR characterization, the DVR does not accept persons who are capable of working. Rather, the DVR accepts impaired persons who have trouble working and then proceeds to provide them with vocational rehabilitation so that they can eventually work. I, therefore,

conclude that the ALJ's statements regarding DVR eligibility are not supported by substantial evidence.

11. Lastly, the Plaintiff argues that the ALJ erred by relying on the VE's non-credible testimony. Credibility determinations are within ALJ's province. *See Adams v. Chater*, 93 F.3d 712, 715 (10th Cir.1996). However, the Court must nonetheless determine whether the ALJ's determination is based upon substantial evidence. The ALJ's hypothetical question to the VE assumed the Plaintiff's "medical-vocational profile and the residual functional capacity simple unskilled and repetitive work." Tr. 20-21. The VE responded to the hypothetical by stating that the Plaintiff can work as a telemarketer, "the same or similar to the telemarketing job that the claimant had previous [sic] performed." Tr. 21. The VE also indicated that the Plaintiff could work as a pottery ware cleaner, laundry sorter, jewelry cleaner, and office maintenance person. *Id*.

12. The prior telemarketing job which the Plaintiff held was with Workshops for the Disadvantaged. Tr. 150-52. The VE conceded that Workshops for the Disadvantaged is a "controlled environment." Tr. 192. Nonetheless, the Plaintiff was fired from this job for failure to come to work, not calling, and low "U.P.H."[2] Tr. 152. Apparently, the Plaintiff had difficulty working as a telemarketer even in a "controlled environment." Moreover, the Plaintiff had difficulty in performing the job of cleaning dental flasks at her father's dental lab, a job not unlike a pottery ware cleaner or jewelry cleaner or scraper. *See* Tr. 134. Additionally, Plaintiff's father stated in an affidavit that the Plaintiff "is unable to sort her own clothes and has to be given numerous instructions and supervision to complete this task." *Id*. Even with respect to the office

---

[2]Nowhere is U.P.H. defined.

6

cleaning position, there is evidence from both the Plaintiff's grandmother and father, who had at various times hired the Plaintiff to perform cleaning jobs, which indicates that the Plaintiff is slow, not thorough, and needs constant supervision. Tr. 132, 135, 175-78. The Court notes that there is no specific reason to find that the evidence from the Plaintiff's grandmother and father is suspect. *See Lawrence v. Chater*, 107 F.3d 674, 677 (8th Cir. 1997)(ALJ can discredit suspect testimony of relatives). The above discussion regarding the positions of telemarketer, pottery ware cleaner, laundry sorter, jewelry cleaner, and office maintenance person demonstrates to me that the VE's conclusions are not supported by substantial evidence. Therefore, I find that the ALJ erred by relying on the VE's testimony.

    13. Since I have agreed with the Plaintiff's contentions in her motion, the Plaintiff would have me remand this matter for an immediate award of benefits. The Tenth Circuit has ruled that the Court has discretion in remanding cases or awarding benefits. *Ragland v. Shalala*, 992 F. 2d 1056, 1060 (10th Cir. 1993). Benefits have been awarded "when the Commissioner patently failed to satisfy the burden of proof at step five, and has long delayed proceedings." *Taylor v. Callahan*, 969 F. Supp. 664, 673 (D. Kan. 1997)(citing *Ragland*, 992 F. 2d at 1060). Benefits have also been awarded "when substantial evidence required a finding of disability." *Id.* (citing *Talbot v. Heckler*, 814 F. 2d 1456, 1465 (10th Cir. 1987)). Additionally, reversal is warranted when the ALJ failed to apply correct legal tests. *Salas v. Chater*, 950 F. Supp. 316, 320 (D.N M. 1996)(citing *Baca v. Department of Health and Human Services*, 5 F. 3d 476, 478 (10th Cir. 1993); *Casias v. Secretary of Health and Human Services*, 933 F. 2d 799, 801 (10th Cir. 1991)). "When the record 'does not substantially support a finding of disabled any more than it supports a finding of not disabled, ' however, the Tenth Circuit has remanded for further proceedings."

*Taylor*, 969 F. Supp. at 673 (quoting *Thompson v. Sullivan*, 987 F. 2d 1482, 1492 (10th Cir. 1993)). A remand is "appropriate where an ALJ made no findings as to nonexertional impairments or where minimal findings were not supported by adequate evaluation of the evidence in the record." *Id.* (quoting *Talbot*, 814 F. 2d at 1465 n. 6). In sum, to determine whether a matter should be remanded or benefits awarded, one must ask if "additional fact finding would serve an [sic] useful purpose." *Id.*

14. In this matter, I believe that the ALJ should make findings regarding whether the Plaintiff meets or equals the listing before going forward with the remainder of the sequential evaluation process. If the case is not resolved at step three, then the ALJ should be permitted to obtain further VE testimony which may or may not lead to a finding of disability. I, therefore, find that additional fact finding would be useful. Accordingly, a remand for an immediate award of benefits is not warranted in this situation.

## Recommended Disposition

I recommend granting in part the Plaintiff's Motion to Reverse or Remand the Administrative Decision. Specifically, I recommend remanding this matter to the Commissioner so that he can make the required findings at step three of the sequential evaluation process, and if necessary make a proper mental RFC determination, properly consider the DVR eligibility requirements, and obtain further VE testimony at step five of the sequential evaluation process. Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations. A party must file any objections within the ten day period allowed if that party

wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
Leslie C. Smith
United States Magistrate Judge